CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 14, 2026**

Michelle V. Larson
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 24-31514-MVL7** |
| **BRYAN JAMES CABRERA,** | § | **(CHAPTER 7)** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |
| **JOANN NEEDHAM JONES,** | § | |
| | § | |
| **Plaintiff,** | § | **ADVERSARY NO. 24-03067-MVL** |
| | § | |
| **v.** | § | |
| | § | |
| **BRYAN JAMES CABRERA,** | § | **Related to ECF No. 21** |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**<u>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS</u>**

## I. INTRODUCTION

Before the Court is the *Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* and *Brief in Support* (collectively, the "**Motion to Dismiss**") filed by Defendant Bryan James Cabrera (the "**Defendant**" or the "**Debtor**") on March 18, 2026 [ECF No. 22]. In the Motion to Dismiss, the Defendant requests that the Court dismiss all of the causes of action alleged in the *Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) and Objecting to Debtor's Discharge Under § 727(c)* (the "**Amended Complaint**") filed by Plaintiff JoAnn Needham Jones (the "**Plaintiff**") on February 9, 2026 [ECF No. 17], in which the Plaintiff alleges four (4) causes of action pursuant to 11 U.S.C. § 523(a) and 11 U.S.C. § 727(a), respectively.

Subsequently, the Plaintiff filed her *Response to Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* (the "**Response**") on April 8, 2026 [ECF No. 24]. Finally, a *Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure* (the "**Reply**") was filed by the Defendant on April 15, 2026 [ECF No. 25].

The Court held a hearing with respect to the Motion to Dismiss on April 29, 2026. Counsel for the Plaintiff and the Defendant appeared. Following oral argument, the Court took the Motion to Dismiss under advisement. After consideration of the above-mentioned pleadings, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss. The following constitutes the Court's analysis with respect to its ruling.

## II. FACTUAL & PROCEDURAL HISTORY

### *A. Factual History*

The facts underlying the causes of action in the Amended Complaint are quite tragic. The Plaintiff is both the mother of Matthew Svehlak ("**Mr. Svehlak**"), and the independent administrator of Mr. Svehlak's estate. ECF No. 17 at 2. According to the Plaintiff, Mr. Svehlak suffered with mental illness for years and resided at Green Oaks Hospital ("**Green Oaks**") until his discharge at age 31 at an unspecified date. The Plaintiff alleges that, upon discharge from Green Oaks, an employee for Green Oaks put the Plaintiff in touch with Randy Jones ("**Mr. Jones**") in order to help find a safe home for Mr. Svehlak. *Id.* at 2–3.

The Plaintiff alleges that Mr. Jones purported to run group homes for individuals suffering from mental disabilities, and that Mr. Jones promised the Plaintiff that Mr. Svehlak could be placed in a group home for $650 per month. *Id.* at 3. Upon doing so, Mr. Svehlak's medications and overall care would be managed for him. *Id.* Accordingly, the Plaintiff and Mr. Jones agreed to placed Mr. Svehlak in New Beginnings Placement Center ("**New Beginnings**"). *Id.* As alleged in the Complaint, New Beginnings was a non-profit corporation, which forfeited its corporate existence on January 26, 2018, and again on March 10, 2023. *Id.* Importantly, New Beginnings was owned and managed by the Defendant, with Mr. Jones acting in a "managerial role" over the facility in some capacity as well. *Id.*

According to the Plaintiff, at some point in time while allegedly under the care of the Defendant and New Beginnings, the Defendant discovered that Mr. Svehlak had inherited a "significant sum of money" from his deceased brother. *Id.* at 3–4. The Plaintiff alleges that, following Mr. Svehlak's death, she learned that Mr. Svehlak had written the Defendant several

checks related to purported bitcoin investments, and that the Defendant cashed the checks despite never delivering any bitcoin-related assets to Mr. Svehlak in return. *Id.* The Plaintiff further alleges that not only did Mr. Svehlak lack the capacity to make any such investments, but that the Defendant was not licensed to sell same either. *Id.* at 4. Thus, according to the Plaintiff, the Defendant "took advantage" of Mr. Svehlak's mental disability and used his position of authority over Mr. Svehlak to induce any such transactions. *Id.* The Plaintiff further alleges that New Beginnings was purportedly collecting its monthly payments from both the Plaintiff **and** Mr. Svehlak, unbeknownst to the Plaintiff. *Id.* Likewise, Mr. Svehlak allegedly spent and/or cashed out large sums of money while in the care of New Beginnings, for which the Plaintiff remains unable to receive a proper accounting. *Id.*

On or around March 17 or 18, 2018, Mr. Svehlak left the New Beginnings facility at night and was tragically killed after being struck by a car on March 18, 2018. *Id.* According to the Plaintiff, the Defendant was aware that Mr. Svehlak had left the New Beginnings premises, yet did not contact either the Plaintiff or the proper authorities and instead acted "as if he were aware of [Mr. Svehlak's] whereabouts." *Id.* Therefore, the Plaintiff alleges that the Defendant failed to properly care or supervise Mr. Svehlak, failed to intervene prior to his sudden departure from New Beginnings, and failed to properly manage Mr. Svehlak's medications. *Id.*

Notably, the Plaintiff further alleges that, given the forfeiture of New Beginnings' corporate existence and its failure to reinstate its corporate designation until June 2, 2021, "all of its liabilities are the personal liabilities of its owners," including, and most importantly, the Defendant. *Id.* at 4–5. Accordingly, with respect to the causes of action alleged in the Amended Complaint, the Defendant is liable "for all of New Beginnings' acts, omissions, and liabilities." *Id.*

### *B. Procedural History*

#### *1. The State Court Action*

On March 13, 2020, the Plaintiff filed suit against the Defendant, Mr. Jones, and New Beginnings in the 101st Judicial District Court of Dallas, Texas (the "**State Court Action**"), in which she alleged causes of action for negligence, negligence per se, negligent misrepresentation, fraud, and wrongful death. *Id.* at 5. Subsequently, the parties engaged in mediation and entered into a settlement agreement (the "**Settlement Agreement**"), in which New Beginnings and Mr. Jones agreed to pay the Plaintiff a sum of $499,000 pursuant to a structured plan and promissory note. *Id.* Furthermore, the Settlement Agreement provided that the Defendant was individually, as well as jointly and severally, liable with Mr. Jones and New Beginnings for timely payment of the first $100,000 in payments due under the Settlement Agreement. *Id.* The Plaintiff alleges that the Settlement Agreement expressly provided that it did not constitute a release from liability with respect to any of the claims asserted in the State Court Action "unless all payments due under the promissory note were made." *Id.* As to the Defendant, specifically, his release would become effective only after the first $100,000 in payments under the Settlement Agreement were made. *Id.* However, the Defendant, Mr. Jones, and New Beginnings all defaulted under the Settlement Agreement after failing to make any further payments after the initial $55,064.15. *Id.*

#### *2. Bankruptcy/Adversary Proceedings*

On May 28, 2024, the Defendant commenced the underlying bankruptcy proceeding by voluntarily filing for relief under Chapter 7 of the Bankruptcy Code. *See* Case No. 24-31514 at ECF No. 1. Subsequently, on September 5, 2024, the Plaintiff commenced the above-captioned adversary proceeding against the Defendant by: (1) filing an Adversary Proceeding Cover Sheet;

(2) noting that she was pursuing claims with respect to (a) recovery of money/property pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (b) an objection to discharge pursuant to § 727(c)–(e) of the Bankruptcy Code and Bankruptcy Rule 7001(4), and (c) an objection to dischargeability pursuant to § 523(a)(2) and (a)(6) of the Bankruptcy Code and Bankruptcy Rule 7001(6); and (3) requesting $419,000 in monetary relief, which the Plaintiff noted was the remaining balance on the Settlement Agreement's promissory note (collectively, the "**Cover Sheet**"). ECF No. 1.

Notably, the Cover Sheet did not attach any other substantive pleading other than the promissory note executed in connection with the Settlement Agreement. *Id*. Rather, the Plaintiff provided a brief statement of her causes of action, citing an alleged "improper notification of bankruptcy filing [and] objection and revocation of discharge due to a clause in attached promissory note that disallows discharge of note in bankruptcy." *Id.* at 1. In the section of the Cover Sheet providing for additional relief sought, the Plaintiff further requested that the Court, "Attach the debt to [the Defendant's] new entity 'New Life Placement Center,'" which the Plaintiff alleged was not listed in the Defendant's bankruptcy filings as another name for New Beginnings, despite the entity's formation occurring in December 2023. *Id.*

Despite the Defendant having been served with the Cover Sheet and Summons on September 6, 2024, no other substantive filing or document was filed in this case for over thirteen (13) months. On October 24, 2025, the Court entered an *Order to Show Cause* (the "**Show Cause Order**") against the Plaintiff [ECF No. 5], noting that no activity had taken place in the adversary proceeding for over six (6) months, no answer had been filed by the Defendant, and no action had been taken by the Plaintiff to obtain a default judgment. Accordingly, the Court ordered the Plaintiff to show cause via a written response within twenty-one (21) days from entry of the Show

Cause Order why the adversary proceeding should not be dismissed for want of prosecution. ECF No. 5 at 1. The Court further ordered that a hearing be scheduled, given the lack of any substantive pleading contained therein other than the Cover Sheet. *See* ECF No. 10 (notice of hearing with respect to the Cover Sheet).

The Court held a hearing on December 10, 2025 (the "**Show Cause Hearing**") [ECF No. 15]. At the hearing, the Plaintiff appeared *pro se*. The Defendant did not appear. At the Show Cause Hearing, the Court made the Plaintiff aware of the fact that the Cover Sheet was not in fact a complaint as required by Bankruptcy Rule 7003. *See* ECF No. 14 (the *Order Resolving the Order to Appear and Show Cause* entered by the Court on December 11, 2025). The Plaintiff testified that not only was she unaware that she needed to file a complaint separate from the Cover Sheet and the Settlement Agreement, but that she wished to pursue her claims and needed additional time to find counsel. *Id.* at 2. Furthermore, the Court noted that the Defendant had failed to respond to the Cover Sheet or any other filing by the Plaintiff up to the date of the hearing. *Id.* Accordingly, there being no objection, the Court held that the Plaintiff would have until February 9, 2026, sixty-one (61) days from the entry of the Show Cause Hearing, to file a complaint and thereafter serve it on the Defendant pursuant to the applicable rules. *Id.*

The Plaintiff timely filed the Amended Complaint on February 9, 2026, in accordance with the Court's instructions. ECF No. 17. In the Amended Complaint, the Plaintiff alleges four (4) causes of action: (1) objection to dischargeability pursuant to § 523(a)(2)(A) of the Bankruptcy Code; (2) objection to dischargeability pursuant to § 523(a)(4) of the Bankruptcy Code; (3) objection to dischargeability pursuant to § 523(a)(6) of the Bankruptcy Code; and (4) objection to the Debtor-Defendant's discharge pursuant to § 727(a) of the Bankruptcy Code. *Id.* Additionally,

the Plaintiff requests an amount not less than $443,935.85 plus interest and attorney's fees, exemplary and/or punitive damages, and pre- and post-judgment interest. *Id.* at 11.

In the Motion to Dismiss filed on March 18, 2026, the Defendant raises four (4) primary arguments as to why the Court should dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "**Rules**"). First, the Defendant argues that the Cover Sheet is not a pleading under Bankruptcy Rule 7008, nor was it timely filed pursuant to Bankruptcy Rule 4004. *Id.* at 11–14. Second, the Defendant contends that, given the fact that the Cover Sheet is not a pleading, the Amended Complaint cannot be deemed timely and relate back to the Cover Sheet via Rule 15(c). *Id.* at 14. Third, even if the Court were to deem the Amended Complaint timely, the Plaintiff's three causes of action pursuant to § 523(a) are barred by the applicable statute of limitations. *Id.* at 14–17. Finally, the Plaintiff's § 523(a)(2) and (a)(4) claims should be dismissed because the Plaintiff failed to meet the pleading requirements for causes of action involving alleged fraud and misrepresentations, as well as failing to sufficiently allege the existence of a fiduciary relationship between the Defendant and Mr. Svehlak. *Id.* at 15–17.

The Response filed by the Plaintiff on April 8, 2026, provides counterarguments to each of the Defendant's positions. First, the Plaintiff argues that the Cover Sheet was filed timely within the timeframe prescribed by Bankruptcy Rules 4004 and 4007, and constitutes a pleading containing sufficient allegations pursuant to Rule 8. ECF No. 24 at 4–7. Furthermore, given that courts must generally construe pleadings filed by *pro se* litigants more liberally, the Court should ultimately determine that the Cover Sheet contains enough plausible allegations to pass muster under Rule 8 and be construed as a complaint. *Id.*

Second, the Plaintiff contends that, even if the Court were to hold that the Cover Sheet was in fact not a complaint, the Amended Complaint can permissibly relate back to the Cover Sheet

because the Defendant had actual notice of the Cover Sheet, regardless of its deficiencies. *Id.* at 7–9. In other words, under relevant case law, even if the Plaintiff failed to properly file a complaint within the 60-day deadline established under Bankruptcy Rules 4004 and 4007, the Cover Sheet nevertheless provided actual notice to the Defendant of the Plaintiff's objections to discharge and dischargeability, and that such notice should "overcome" any other procedural deficiencies committed by the Plaintiff in commencing this adversary proceeding. *Id.* (quoting *Louviere v. Thompson* (*In re Thompson*), 572 B.R. 638, 654 (Bankr. S.D. Tex. 2017).

Third, the Plaintiff argues that the § 523(a) causes of action are not barred by the applicable four-year statute of limitations because the Settlement Agreement established a "debt" against the Defendant "well within the statute of limitations for each of her underlying claims." *Id.* at 9–11. Put simply, the Amended Complaint "does not seek any new money judgment," but rather seeks relief with respect to a money judgment against the Defendant in the State Court Action that has already been established as a "debt" with the applicable limitations period. *Id.*

Fourth, the Plaintiff contends that her § 523(a)(2) and (a)(4) causes of action are sufficiently pleaded with respect to alleging both false representations made by the Defendant under § 523(a)(2)(A) and a breach of the Defendant's fiduciary duties owed to Mr. Svehlak under § 523(a)(4). *Id.* at 11–14. Finally, the Plaintiff requests that, to the extent the Court dismisses any causes of action or the Amended Complaint pursuant to Rule 12(b)(6), she be granted leave to amend the Amended Complaint. *Id.* at 14–15.

## III. JURISDICTION

Bankruptcy subject matter jurisdiction exists in this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).

## IV. <u>STANDARD OF REVIEW</u>

### *A. Rule 12(b)(6)*

Rule 12(b)(6), incorporated by Bankruptcy Rule 7012(b), authorizes dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). However, the Court need not "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations, which, if accepted as true, state a plausible cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim satisfies the plausibility test 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ, 2021 WL 2546664, at *1 (Bankr. N.D. Tex. June 3, 2022) (Jones, J.). This plausibility requirement sits somewhere between possible and probable, and is satisfied where the plaintiff's pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

Although the complaint is not required to provide detailed factual allegations, it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, numerous courts within the Fifth

Circuit have reiterated that because "a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted." *Reagor-Dykes*, 2021 WL 2546664 at *2 (citation omitted). In reviewing the motion, the court looks to the pleadings, alongside any documents attached or incorporated into the complaint by reference. *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

Moreover, Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Claims asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the heightened requirements of Rule 9(b). *City of Miami Gen. Emps'. & Sanitation Emps'. Ret. Tr. v. Globe Life Inc.*, No. 4:24-CV-376, 2025 WL 2793800, at *3 (E.D. Tex. Sept. 29, 2025) (quoting *Firth v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)). To meet the heightened particularity standard, a plaintiff pleading fraud must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). In other words, Rule 9(b) requires the complaint to set forth with particularity the "who, what, when, where and how" comprising the alleged fraud. *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019).

***B. Pleading Principles & Requirements***

There are several legal principles of note, along with their corresponding procedural rules, that are at issue in this matter. First, courts must consider the substantive requirements of a pleading. Bankruptcy Rule 7008 provides that Rule 8 applies in an adversary proceeding. Fed. R.

Bankr. P. 7008. Accordingly, Rule 8(a) provides the framework for what a pleading that states a claim for relief, such as a complaint, must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a)(1)–(3). However, such pleading requirements are not generally met simply through the filing of a civil cover sheet that initiates a lawsuit. The District Court for the Northern District of Texas previously held that a civil cover sheet "is not a pleading and does not contain the certifications required by Rule 11 of the Federal Rules of Civil Procedure," to constitute an active complaint. *Pesole v. Health Care Serv. Corp*., 277 F. Supp.3d 866, 872 (N.D. Tex. 2017) (quoting *Gonzalez v. Wal-Mart Stores, Tex., LLC*, Civ. No. H-14-2880, 2015 WL 3613648, at *4 (S.D. Tex. June 9, 2015)) (internal quotations omitted); *see also Llort v. BMW of N. Am., LLC*, Case No. 1:20-CV-94-LY, 2020 WL 2928472, at *4 (W.D. Tex. June 2, 2020) (noting that courts generally do not rely on a civil cover sheet in determining the amount in controversy for diversity jurisdiction purposes because the cover sheet is "not considered part of the complaint").

The second legal principle of note is the proper timing of a complaint, especially in the context of either a challenge to the dischargeability of a debt pursuant to § 523(a) of the Bankruptcy Code, or an objection to discharge under § 727(a) of the Bankruptcy Code. Bankruptcy Rule 4004(a) establishes that, in a Chapter 7 case, a complaint objecting to a debtor's discharge "must be filed within 60 days after the first date set for the § 341(a) meeting of creditors." Fed. R. Bankr. P. 4004(a)(1). Likewise, Bankruptcy Rule 4007(c) establishes that a complaint to determine the dischargeability of a debt under § 523 must also be filed "within 60 days after the first date set for the § 341(a) meeting of creditors." Fed. R. Bankr. P. 4007(c).

The third legal principle of note pertains to procedures for amending a prior pleading and whether a subsequent pleading relates back to the original. Bankruptcy Rule 7015 states that Rule 15 applies in adversary proceedings. Fed. R. Bankr. P. 7015. Rule 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—**in the original pleading**; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P 15(c) (emphasis added).

The Fifth Circuit has not only noted that, "Amendments that correct technical deficiencies in a pleading or serve to expand the facts alleged in the original pleading satisfy the relation back requirements of [R]ule 15(c)," but also that an amendment qualifies for purposes of relation back to the original pleading if it "simply restates with greater particularity or amplifies the details of the complaint." *McLellon v. Lone Star Gas Co*., 66 F.3d 98, 102 (5th Cir. 1995). Put simply, "an amended complaint filed to cure Rule 8 pleading deficiencies relates back to the filing date of the original, *albeit* deficient, complaint when the amended complaint properly pleads what the party attempted to set forth in the original complaint." *Id.* at 103 (internal quotations omitted) (emphasis in original).

Nevertheless, courts hold that relation back to the original filing may not be permissible where the original filing "lacked even the basic elements of a pleading required by Bankruptcy Rule 7008." *In re Pagan*, 282 B.R. 735, 740 (Bankr. D. Mass. 2002). As noted in *Pagan*, fair notice "demands" that the opposing party be "sufficiently apprised of the existence and the basis" for the underlying dispute. *Id.* There can be no relation back when "there was no initial complaint."

*In re Hunter*, 552 B.R. 864, 870 (Bankr. D. Kan. 2016). Where the initial pleading is "so bare" that, even if construed as an original pleading, it does not describe the underlying conduct, transaction, or occurrence at issue, that pleading is insufficient for application of Rule 15(c). *Id.*

The final legal principle under consideration is the notion that courts generally construe filings of *pro se* litigants "liberally." *See, e.g., Collins v. Dallas Leadership Found.*, 77 F.4th 327, 329 (5th Cir. 2023). In fact, the liberal construction of pleadings filed by *pro se* litigants is "even more compelling" in terms of whether a court permits an amended complaint to relate back to the original, deficient complaint. *McClellon*, 66 F.3d 98 at 103. Likewise, before a court should dismiss a *pro se* litigant's case sua sponte, the court must ordinarily "provide an opportunity to amend the complaint to remedy the deficiencies." *Carmouche v. Hooper*, 77 F.4th 362, 368 (5th Cir. 2023). Accordingly, the Fifth Circuit has previously held that the appropriate remedy when faced with a *pro se* complaint that is "nonconforming or deficient" is to "grant the complainant time within which to amend the complaint." *McClellon*, 66 F.3d at 103.

***C. 11 U.S.C. § 523(a)***

Section § 523(a)(2) of the Bankruptcy Code precludes the dischargeability of an individual debtor's debt with respect to:

> [M]oney, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(A)–(B).

Section 523(a)(4) precludes the dischargeability of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Finally, §

523(a)(6) precludes the dischargeability of a debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Generally, dischargeability of a debt involves a two-step analysis: (1) establishment of the debt itself; and (2) a determination as to the nature of the debt. *See In re Fitch*, 349 B.R. 133, 144 (Bankr. N.D. Tex. 2006). As for the first step, a bankruptcy court cannot declare a debt nondischargeable "until the creditor establishes the existence and amount of that debt." *In re Burg*, 641 B.R. 120, 131 (Bankr. S.D. Tex. 2022). Under the Bankruptcy Code, a "debt" is defined as a "liability on a claim" and a claim is defined, in pertinent part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A), (12).

However, establishment of the debt at issue is subject to the applicable state statute of limitations unless "there is a valid judgment." *Fitch,* 349 B.R. at 143 (quoting *Lee-Benner v. Gergely* (*In re Gergely*), 110 F.3d 1448, 1453 (9th Cir. 1997)) (internal quotations omitted); *Banks v. Gill Distrib. Cntrs., Inc*., 263 F.3d 862, 867–68 (9th Cir. 2001) (citation omitted) (internal quotations omitted).

## V. LEGAL ANALYSIS

### *A. The Cover Sheet*

The first issue before the Court is whether the Cover Sheet filed by the Plaintiff constitutes a "pleading" pursuant to Rule 8. The Defendant argues that the District Court for the Northern District of Texas has previously established that the civil cover sheet is "not a pleading and does not contain the certifications required by Rule 11 of the Federal Rules of Civil Procedure." ECF No. 22 at 12; *Pesole*, 277 F. Supp.3d at 872. Instead, courts have generally held that the civil cover

sheet is "merely an administrative aid to the court clerk, and is therefore not typically considered part of the litigant's pleading papers." ECF No. 22 at 12; *Llort*, 2020 WL 2928472 at *4 n.4 (citation omitted) (internal quotations omitted). Accordingly, if courts do not consider a cover sheet to be part of a complaint, then the Cover Sheet filed by the Plaintiff fails to comport with Rule 3, made applicable by Bankruptcy Rule 7003, which requires the filing of a complaint to commence an adversary proceeding. ECF No. 22 at 13; *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

Conversely, the Plaintiff argues that Rule 8(a) merely requires: (1) a short and plain statement with respect to the Court's jurisdiction; (2) a short and plain statement of the claims that the plaintiff is allegedly entitled to relief for; and (3) a demand for the relief sought. ECF No. 24 at 4. Additionally, the Plaintiff contends that, notwithstanding the fact that she only filed the Cover Sheet, she "identified detailed, plausible causes of action, identified the relevant code sections under which they were filed, made demands for relief against [the] Defendant, and attached several documents to support the basis of the same." *Id.* at 5.

The Court agrees with the Defendant and finds that the Cover Sheet is not generally a pleading. Courts that have been faced with this issue have consistently held that a cover sheet, by itself, cannot satisfy the notice requirements of Rule 8 and thus cannot qualify as a complaint with Rule 3. *See Shaver v. Astrue*, 783 F. Supp.2d 1072, 1077 (N.D. Iowa 2011). In *Shaver*, the District Court for the Northern District of Iowa noted that there is "simply not enough information" in a civil cover sheet to be construed as a complaint, "even under the liberal standards of notice pleading." *Id.* More specifically, the court in *Shaver* noted that, at the very least, a civil cover sheet does not include any statement as to the grounds for a court's jurisdiction—a basic requirement under Rule 8(a). *See id.* at 1077.

In *Gonzalez*, the District Court for the Southern District of Texas noted that, in evaluating whether the amount in controversy for diversity jurisdiction had been sufficiently pleaded, "a civil cover sheet is not sufficient to establish the jurisdictional minimum amount in controversy." *Gonzalez*, 2015 WL 3613648 at *4. In other words, the cover sheet is "simply too imprecise to make the requisite demonstration of the amount in controversy for purposes of diversity jurisdiction." *Id.* (citation omitted) (internal quotations omitted). Finally, the District Court for the Northern District of Texas held in *Cameron* that a plaintiff's act of "checking boxes" on the cover sheet "without any factual elaboration" was insufficient to state a claim. *Cameron v. PNC Bank*, No. 3:24-cv-2839-X, 2025 WL 1886722, at *2 (N.D. Tex. May 19, 2025).

The Court recognizes the leniency with which it must evaluate filings by *pro se* litigants. Likewise, it concedes that the Cover Sheet contains at least some, albeit brief, information with respect to the causes of action the Plaintiff intended to bring. However, the Cover Sheet simply cannot meet the bare minimum pleading requirements of Rule 8(a).

First, as noted in *Shaver*, the Cover Sheet contains no plausible grounds for this Court's jurisdiction over the causes of action. In fact, the Cover Sheet does not contain a single reference with respect to the Court's jurisdiction to preside over this case. Second, as noted in *Gonzalez*, while the Plaintiff demands $419,000 in relation to the remaining balance under the Settlement Agreement, courts generally do not consider the amount in controversy stated on a cover sheet for pleading purposes. Finally, while the Plaintiff checked the boxes on the Cover Sheet for the claims she intended to assert, *Cameron* establishes that the mere checking of boxes, without more, is insufficient to constitute a sufficient pleading.

### *B. The Amended Complaint & the Actual Notice/Relation Back Doctrine*

Although the Court does not find that the Cover Sheet was in fact a "pleading," the procedural history of this case requires a nuanced approach in determining whether the Amended Complaint can relate back to the Cover Sheet, despite the aforementioned deficiencies. The Defendant argues that the Amended Complaint cannot relate back to the Cover Sheet because the Cover Sheet is not a pleading and thus "there is no original pleading filed by [the Plaintiff] to which the [Amended] Complaint could relate back." ECF No. 22 at 14. Rule 15(c) sets out "specific conditions" that must be met in order for an amended pleading to relate back to the original pleading—conditions that cannot be met when the Cover Sheet does not constitute an original pleading to begin with. *Id.*

The Plaintiff counters by arguing that, aside from Rule 15(c), courts have recognized the "actual notice/relation back" doctrine ("**Relation Back Doctrine**"), which provides that, even if a creditor fails to properly commence an adversary proceeding within the 60-day deadline pursuant to Bankruptcy Rule 4007(c), the creditor can overcome this deficiency so long as, prior to the 60-day deadline, they file a pleading that "contains sufficient information putting the debtor on notice that the creditor is attempting to object to the discharge of a particular debt." ECF No. 24 at 7 (quoting *Thompson*, 572 B.R. at 654) (internal quotations omitted). Moreover, the Plaintiff relies upon cases such as *Rand*, in which the Bankruptcy Court for the Southern District of New York permitted a late-filed complaint four months after the Bankruptcy Rule 4007 deadline because the *pro se* creditor had timely filed a letter and related documents that, read together, constituted a complaint pursuant to Rule 8(a) and thus permitted the creditor to file a more formal objection to discharge after the deadline had passed. *In re Rand*, 144 B.R. 253, 255–56 (Bankr. S.D.N.Y. 1992).

Put together, the Plaintiff contends that, essentially, so long as the original filing contains sufficient factual information with respect to one's objection to discharge and a debtor is provided adequate notice with respect to the original filing, the amended pleading can relate back to the original filing. *See* ECF No. 24 at 9 (arguing that the Cover Sheet contained sufficient information to commence the adversary proceeding and that the Defendant's counsel received actual notice via electronic notifications).

The Court ultimately agrees with the Plaintiff, but on slightly different grounds. However, the Court must dispense with two threshold matters. First, many of the cases relied upon by the Plaintiff with respect to the Relation Back Doctrine can be largely distinguished on the facts of this case. For instance, in *Thompson*, the filings under consideration by the Bankruptcy Court for the Southern District of Texas were a timely filed motion for relief from the automatic stay and a subsequently filed adversary complaint, and thus a determination as to whether the motion constituted a "pleading" was not a necessary consideration at all. *Thompson*, 572 B.R. at 649–50. Conversely, as noted above, the Court has determined that the Cover Sheet is not a pleading, and thus its application to the Relation Back Doctrine is anything but seamless.

Second, the Court notes that the argument pursued by the Plaintiff with respect to the Relation Back Doctrine does not, nor cannot, be tied to the language in Rule 15(c) that articulates the requirements for how an amended pleading relates back to its original version. *See* Fed. R. Civ. P. 15(c)(1) (articulating three avenues in which an amended pleading can relate back to the filing date of an original pleading, thus making the amended pleading timely). There can effectively be no relation back for a late filed complaint when no initial **complaint** was filed. *See In re Hunter*, 552 B.R. 864, 870 (Bankr. D. Kan. 2016) (noting that a "bungled initial filing" prevented

application of the mechanism under Rule 15(c)(1) with respect to an untimely amended complaint). In other words, the "lynchpin" in Rule 15(c) is the existence of an **initial pleading**. *Id.*

However, notwithstanding the fact that Rule 15(c) may not be applicable, the Court nevertheless finds that the Relation Back Doctrine, which echoes many of the same principles, applies. The primary reason for this determination is that, despite the procedural imperfections of the Cover Sheet, the filing of the Cover Sheet provided actual and sufficient notice to the Defendant that the Plaintiff intended to object to dischargeability.

As the bankruptcy court noted in *Thompson*, relying upon the Fifth Circuit's decision in *McGuirt*, in order for the Relation Back Doctrine to "have any merit" as a compelling argument, "the focus must be on whether the creditor gave notice to the *debtor* prior to the deadline that the creditor intended to object to discharge." *Thompson*, 572 B.R. at 652 (emphasis in original). Accordingly, so long as the creditor, "had taken some definitive action to prevent the discharge of her claim" prior to the filing deadline, and had not "sat on her hands up to the deadline and then, only after it expired, taken action to prevent the discharge of her claim," the Relation Back Doctrine could potentially "carry the day for the creditor." *Id.* at 652–53; *see also Kuenstler v. Half Price Books, Recs., Mags., Inc.*, 589 B.R. 138, 144 (E.D. Tex. 2018) (echoing the court's application of the Relation Back Doctrine in *Thompson* and establishing that, so long as the creditor, files a sufficient pleading prior to the deadline that puts the debtor on notice of the creditor's discharge, the creditor may use the Relation Back Doctrine to overcome a failure to timely commence an adversary proceeding).

Here, the Court finds that the Plaintiff took definitive action to prevent the discharge of her debt by commencing the above-captioned adversary proceeding and filing the Cover Sheet. To be certain, the deadline to object to dischargeability was September 9, 2024, and the Plaintiff

commenced this action and filed the Cover Sheet on September 5, 2024, despite not having been served with the Notice of Commencement of the Defendant's bankruptcy case. *See* Case No. 24-31514 at ECF No. 4. Accordingly, the Plaintiff unquestionably took preventative measures with respect to the dischargeability of the debt in question and did not simply "sit on her hands" until the 60-day deadline under Bankruptcy Rule 4007(c) had passed.

In that sense, the circumstances of this case are similar to the facts in *Rand*. In *Rand*, while the letter filed by the plaintiff was deemed a complaint (unlike the Cover Sheet in this case), the actions taken by the plaintiff were nothing more than filing a letter with the court as an objection to the discharge prior to the applicable deadline. *Rand*, 144 B.R. at 255. The plaintiff did not take any additional actions prior to the deadline passing—including formally commencing an adversary proceeding or filing a cover sheet—under the "mistaken belief that the court would serve her adversary" on the defendant without her taking any further actions. *Id.* Both the plaintiff in *Rand* and the Plaintiff in this case attempted similar actions and committed similar, inadvertent, procedural errors. In fact, unlike the plaintiff in *Rand*, the Plaintiff in this case formally commenced an adversary proceeding within the 60-day timeframe.

The Court recognizes that the Relation Back Doctrine with respect to the Cover Sheet is anything but a perfect match to the principles articulated in cases like *Rand*, *Thompson*, or *Kuenstler*. However, much like the court's determination in *Thompson*, the Court is "unwilling to turn a blind eye" to the Relation Back Doctrine, given the Plaintiff's good faith, albeit imprecise, attempt to provide the Defendant with actual notice of her objection to dischargeability via commencement of this adversary proceeding. *Thompson*, 572 B.R. at 656.

More importantly, the Defendant had actual notice of both the commencement of the adversary proceeding, as well as the numerous filings that followed the Cover Sheet, and failed to

object to the sufficiency of the Cover Sheet as a pleading, let alone participate in this case, for nearly eighteen (18) months. To be certain, the following actions and/or proceedings have taken place in this matter thus far: (1) the Cover Sheet was filed in the adversary proceeding and commencement of this case was noted on the docket in the underlying bankruptcy proceeding [Case No. 24-31514, ECF No. 13] on September 5, 2024; (2) the Court issued the Show Cause Order on October 24, 2025; (3) the Show Cause Hearing was held on December 10, 2025; (4) an Order resolving the Show Cause Order was entered by the Court on December 11, 2025; and (5) the Plaintiff filed the Amended Complaint on February 11, 2026. The Defendant **did not file a single pleading nor participate in a single hearing in this adversary proceeding within that entire timeframe**.

Rather, the Defendant waited until the Amended Complaint was timely filed in accordance with the deadline established by the Court before attempting to dispute the procedural and substantive deficiencies that should have been readily apparent for over a year and a half. No matter how flawed or mistaken the Plaintiff may have been in failing to file an actual pleading, the Court finds that the commencement of this adversary proceeding is definitive enough of an action to apply the Relation Back Doctrine and deem the Amended Complaint as timely, especially considering that the Plaintiff's errors were made at a time when she was *pro se*.

Moreover, dismissal of the Amended Complaint on such a technical basis would not accord with the liberal pleading principles established by Supreme Court precedent. There exists a general bias in the federal rules in "resolving disputes on their merits." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). Dismissal of the **current** Amended Complaint, based upon deficiencies that the Court gave the Plaintiff the authority to remedy, would be antithetical to that principle.

Likewise, while Rule 15(c) may be inapplicable, the principles underlying its application in *McCLellon*—including the liberal construction courts typically afford *pro se* complainants in terms of leave to amend "nonconforming or deficient pleadings"—are paramount to the Court's determination in this matter. *McClellon*, 66 F.3d at 103. The Fifth Circuit identified in *McClellon* that "the appropriate remedy when granting a motion based on nonconforming or deficient pleadings is to grant the complainant time within which to amend the complaint." *Id.* Put simply, the Court provided that remedy to the Plaintiff on December 11, 2025, and the Plaintiff complied by acknowledging her misunderstanding of pleading requirements, hiring counsel to draft the Amended Complaint, and filing same within the required timeframe. A dismissal now, and only after the Plaintiff relied upon and complied with the Court's Order, would be potentially inequitable. Given the facts of this case and the Defendant's lack of participation until the eleventh hour, the Court finds that the liberal construction of policies with respect to *pro se* litigants, and the disfavor of dismissals in general, favors application of the Relation Back Doctrine on these facts.

Accordingly, the Court finds that the Relation Back Doctrine applies to the Amended Complaint because the Cover Sheet, while not a pleading, provided the Defendant with actual notice of the Plaintiff's objection to dischargeability within the required 60 days pursuant to Bankruptcy Rule 4007(c).

However, notwithstanding liberally construing the relationship between the Amended Complaint and the Cover Sheet, the Court cannot apply the Relation Back Doctrine to Count II of the Amended Complaint as it pertains to § 523(a)(4). The Court notes that the Cover Sheet does not contain any marking or notation identifying § 523(a)(4) as an objection to discharge being pursued by the Plaintiff. *See* ECF No. 1 at 1. Therefore, the Court determines that the Amended

Complaint, which **does** contain a claim under § 523(a)(4), cannot relate back to a cause of action that the Plaintiff never indicated an intent to pursue. Accordingly, Count II of the Amended Complaint is hereby dismissed.

### *C. Statute of Limitations*

The Defendant's third argument largely pertains to the state court proceedings and the nature of the Settlement Agreement as they each relate to dischargeability. More specifically, the parties' dispute on this issue pertains to whether the Plaintiff's claims are barred by applicable state law statutes of limitations.

As noted by the parties, the first step of a dischargability analysis is the establishment of a debt, which is subject to the applicable state statute of limitations. ECF No. 22 at 14. Accordingly, "if suit is not brought within the time period allotted under state law, the debt cannot be established." *Id.* (quoting *In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994)) (internal quotations omitted). The Defendant contends that, even if the Court were to consider the Amended Complaint as an effective pleading, the Plaintiff's § 523(a) causes of action are barred by the applicable statute of limitations because the Plaintiff "did not obtain a judgment pre-petition" and is thus now seeking a new, untimely, money judgment via this adversary proceeding. ECF No. 22 at 14–17.[1] More specifically, the Defendant contends that Counts I and III of the Complaint pertain to allegations of fraud and civil theft, respectively, that occurred prior to March 18, 2018—the day Mr. Svehlak passed away—and that under Texas law, the statute of limitations related to fraud claims is four years and two years for civil theft claims. *Id.* Accordingly, the Plaintiff either needed to obtain a money judgment for fraud in state court to serve as an underlying "debt" for dischargeability

[1] To be certain, the Defendant's argument on this issue only pertains to Counts I and III, given that Count II is dismissed already and the Motion to Dismiss does not contend that Count IV is precluded by any appliable statute of limitations.

purposes, or file the current causes of action prior to March 17, 2020 and 2022, respectively. *Id*. The Defendant contends the Plaintiff accomplished neither.

The Plaintiff contends that the "only relevant question is whether a plaintiff sought to enforce their debt against a debtor within the period prescribed by the underlying statute of limitations," which the Plaintiff contends that she did by initiating the state court proceedings. ECF No. 24 at 10 (citing *Spinnenweber v. Moran*, 152 B.R. 493, 496 (Bankr. S.D. Ohio 1993)). The Plaintiff argues that she filed a state court lawsuit in Texas on March 13, 2020, arising out of the facts and debt asserted in this case, and that, contrary to the Defendant's argument that the Plaintiff is seeking a new money judgment, she established a "debt" via the Settlement Agreement "well within the statute of limitations for each of her underlying claims." *Id*. at 11. Therefore, the Plaintiff has satisfied the first step of the Court's dischargeability analysis. *Id.*

Here, the Court need not determine the nature of the underlying "debt" or the enforceability of the Settlement Agreement as a "judgment" for dischargeability purposes because the Defendant's statute of limitations argument amounts to an affirmative defense and consequently does not appear on the face of the Amended Complaint. The Fifth Circuit has consistently held that a statute of limitations "may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc*., 339 F.3d 359, 366 (5th Cir. 2003). Here, the Amended Complaint does not clearly establish that Counts I and III are barred by the applicable statute of limitations and, thus, the Motion to Dismiss is denied on this issue.[2]

---

[2] Moreover, the Court notes that the Settlement Agreement, of which the Court took judicial notice, expressly waived the Defendant's right to assert "any claims based on any statute of limitations" or any argument with respect to the "passage of time" between Mr. Svehlak's death and the filing of the causes of action in state court. ECF No. 13 at 7–8. Therefore, even if the Defendant's statute of limitations affirmative defense were as clear cut as the Defendant contends, the Defendant expressly waived any right to such argument in connection with the Plaintiff's causes of action.

***D. Rule 12(b)(6)***

The Defendant's fourth and final argument is that Counts I and II should be dismissed for failure to allege sufficient facts under the respective causes of action. ECF No. 22 at 15–17. The Defendant argues: (1) Count I should be dismissed because the Plaintiff failed to allege facts to support a claim for fraud against the Defendant related to taking care of Mr. Svehlak with respect to a § 523(a)(2)(A) claim; and (2) Count II should be dismissed because the Plaintiff "failed to allege that [Mr.] Cabrera owes any fiduciary duty" for purposes of a § 523(a)(4) claim. *Id.* at 15–16. However, given that the Court has already dismissed Count II, the remaining argument pertinent to this matter is solely with respect to Count I.

The Plaintiff argues that Count I falls under § 523(a)(2)(A), which pertains to false pretenses and representations and is "separate and distinct from 'actual fraud.'" ECF No. 24 at 11–12 (quoting *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016)). Moreover, the Plaintiff argues that the Amended Complaint contains sufficient allegations with respect to: (1) the Defendant's representation to Mr. Svehlak that the Defendant could take care of him despite not being licensed to do so; (2) the Defendant's representation to Mr. Svehlak regarding the Defendant's ability to buy bitcoin for Mr. Svehlak as an investment; and (3) the Defendant's knowledge as to the falsity of such representations. *Id.* at 12.

The Fifth Circuit has made clear that a complaint that seeks relief under § 523(a)(2)(A) is "subject to the heightened pleading requirements" of Rule 9(b). *Matter of Lindsey*, 733 Fed. App'x 190, 192 (5th Cir. 2018). At a minimum, the plaintiff must allege "the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." *Id.* (quoting *Matter of Haber*, 12 F.3d 426, 439 (5th Cir. 1994)) (internal quotations omitted). In other words, the plaintiff must supply the "who, what, when, where, and how" of the

alleged fraud, and must allege more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). Likewise, for a creditor to except a debt from discharge for false pretenses and/or false representations under § 523(a)(2)(A), the creditor must show: (1) the debtor made a false misrepresentation; (2) the debtor, either (a) knew was false or made with reckless disregard for the truth or (b) that debtor possessed an intent to deceive or defraud; and (3) the creditor justifiably relied on the representation. *In re Casali*, 517 B.R. 835, 843 (Bankr. N.D. Ill. 2014). All three elements must be met to prevail on a § 523(a)(2)(A) claim. *Id.*

At issue here are two distinct alleged fraudulent representations: (1) the representation with respect to Mr. Svehlak's care under the Defendant; and (2) the Defendant's ability to purchase bitcoin on Mr. Svehlak's behalf. As to the first representation, the Court finds that the Amended Complaint does not sufficiently meet the Rule 9(b) pleading standards nor does it satisfy the first element for a plausible § 523(a)(2)(A) claim. The primary issue is that, according to the allegations in the Amended Complaint, the representation with respect to Mr. Svehlak's care was allegedly made by Mr. Jones rather than the Defendant. To be certain, the Plaintiff alleges that Mr. Jones "told [the] Plaintiff that [Mr. Svehlak] would be taken care of," and that the Plaintiff "trusted" Mr. Jones and eventually agreed to place Mr. Svehlak in the care and custody of New Beginnings. ECF No. 17 at 3. Although the Plaintiff alleges that the Defendant owned and worked for New Beginnings, the Plaintiff crucially leaves out any false pretenses and/or fraudulent representation that **the Defendant** specifically made to the Plaintiff regarding Mr. Svehlak's care. Additionally, while the Plaintiff later alleges in the Amended Complaint that the Defendant "represented that he could take care of [Mr. Svehlak]" and that the Defendant knew that New Beginnings lacked the "licensure and experience" to take care of Mr. Svehlak, the Plaintiff fails to allege the "where,

when, and how" the Defendant, specifically, made that representation to the Plaintiff separate and apart from the same representation allegedly made by Mr. Jones. *Id.* at 6.

Therefore, the Court does not find that that the Plaintiff sufficiently pleaded allegations of a fraudulent representation and/or false pretenses specifically with respect to Mr. Svehlak's care. To the extent the Plaintiff were to amend this cause of action with respect to this alleged representation, the Court would require allegations that sufficiently address: (1) what the Defendant represented to Mr. Svehlak regarding his care (or how it can be attributed to the Defendant); (2) when and where that representation took place; and (3) how any representation that the Defendant made to Mr. Svehlak was fraudulent. In their current form, however, the Plaintiff's allegations on this matter are insufficient.

However, the Court finds the alleged representations with respect to bitcoin to be sufficient under Rule 9(b). In looking at the Amended Complaint, the Plaintiff alleges that: (1) she discovered that Mr. Svehlak had written several checks to the Defendant for bitcoin investments; (2) the Defendant cashed the checks without delivering any bitcoin assets to Mr. Svehlak; (3) the Defendant knew he had no capacity to make investments on Mr. Svehlak's behalf, nor was he licensed to do so; and (4) the Defendant "took advantage" of his position and authority over Mr. Svehlak in taking his money. *Id.* at 3–4. The Court finds that the Plaintiff provides sufficient information with respect to the Defendant's alleged knowledge of the falsity of his ability to purchase bitcoin. Likewise, the Plaintiff alleges with sufficient particularity Mr. Svehlak's reliance on any such false pretenses created by the Defendant through the patient/caregiver relationship.

The closest call is whether the Amended Complaint contains sufficient allegations regarding any fraudulent representation made or false pretenses created by the Defendant with respect to his ability to invest bitcoin. False pretenses do not require "overt misrepresentations"

and can include "omissions or a failure to disclose on the part of the debtor" where the circumstances "create a false impression which is known by the debtor." *Casali*, 517 B.R. at 842 (citation omitted) (internal quotations omitted). Here, there are sufficient allegations for the Court to find that the Defendant created the false pretense that he was able to invest Mr. Svehlak's money into bitcoin for a profit by the fact that Mr. Svehlak transferred money to the Defendant for the express purpose of investing in bitcoin, the Defendant had no ability to invest Mr. Svehlak's money, and the Defendant allegedly never made any such investment on Mr. Svehlak's behalf. The Plaintiff provides the who, what, where, when, and how of this alleged fraudulent act by the Defendant, and, at this juncture, that is sufficient to survive a Rule 12(b)(6) motion.

Accordingly, the Court denies the Motion to Dismiss with respect to Count I and finds that, with respect to the bitcoin allegations, the Plaintiff has sufficiently pleaded a cause of action pursuant to § 523(a)(2)(A).

## VI. CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED** that the Motion to Dismiss is **GRANTED IN PART** with respect to Count II **with prejudice**; it is further

**ORDERED** that the Motion to Dismiss is **DENIED IN PART** with respect to Counts I, III and IV; it is further

**ORDERED** that the Plaintiff's request for leave to amend the Amended Complaint is **GRANTED IN PART** pursuant to Rule 15(a) with respect to Count I and the allegations related to Mr. Svehlak's care; and it is further

**ORDERED** that the Plaintiff shall have **thirty (30) days from entry of this Order** to file an amended complaint.

**### END OF ORDER ###**